UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-13225-GAO

ALFREDO ARAUJO,
Plaintiff,

v.

UGL UNICCO-UNICCO OPERATIONS and ATHENAHEALTH, INC.,
Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION
September 30, 2014

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a Report and
Recommendation (dkt. no. 31) with respect to the motion to dismiss filed by one defendant,
athenahealth, Inc. (dkt. no. 10). I have reviewed the relevant pleadings, the parties' motion
papers, supporting documentation, the Report and Recommendation itself, and the subsequent
objections. I concur with the magistrate judge's conclusion that the plaintiff has failed to state a
plausible claim of discrimination against athenahealth and that, consequently, the complaint
should be dismissed.

I also agree with the magistrate's conclusion that the dismissal should be without
prejudice so as to provide the plaintiff with the opportunity to amend his complaint. In his
objection to the Report and Recommendation, the plaintiff references Mr. Costa's practices
regarding the selection of supervisors, a list of previously-selected supervisors, and a witness
which may have information material to the plaintiff's claims of discrimination. In light of the
plaintiff's possible allegations and in accordance with the magistrate's recommendation, it is not

clear that amendment would be futile. See Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

I do not adopt the magistrate judge's conclusion that an argument raised by athenahealth in a footnote should be deemed waived. If appropriate, that issue may be raised with respect to any future amended complaint.

Accordingly, I ADOPT the recommendation of the magistrate judge. The defendant's Motion to Dismiss (dkt. no. 10) is GRANTED and the complaint is dismissed without prejudice as to athenahealth. The plaintiff shall file an Amended Complaint within thirty-five (35) days. Failure to do so will result in dismissal of this action against athenahealth.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

| | | |
|---|---|---|
| ALFRED ARAUJO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 13-13225-GAO |
| DTZ-UGL UNICCO-UNICCO | ) | |
| OPERATIONS, NEW ENGLAND | ) | |
| REGION and ATHENAHEALTH, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON
## ATHENAHEALTH, INC.'S MOTION TO DISMISS

July 10, 2014

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff Alfred Araujo ("Araujo") has brought this action pro se against his

employer, DTZ-UGL Unicco ("DTZ"), and athenahealth, Inc. ("athenahealth"), claiming

that the defendants discriminated against him on the basis of his race when he was

employed as a cleaning and maintenance supervisor at the Arsenal on the Charles

property in Watertown, Massachusetts.  Specifically, Araujo, who is from the Dominican

Republic, claims that DTZ decided to transfer him from the Watertown property to a less

desirable location in Chelsea, Massachusetts because a manager at athenahealth did not

like the color of his skin.  Although the plaintiff has not alleged any specific causes of

action in his Verified Complaint, it is undisputed that he is attempting to assert claims

against the defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and/or Mass. Gen. Laws ch. 151B ("Chapter 151B").

The matter is presently before the court on "athenahealth, Inc.'s Motion to Dismiss" (Docket No. 10), by which athenahealth is seeking the dismissal of Araujo's claims against it, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6). The defendant contends that dismissal is warranted because the plaintiff failed to file a timely charge of discrimination against it with either the Equal Employment Opportunity Commission ("EEOC") or the Massachusetts Commission Against Discrimination ("MCAD"). It further contends that even if Araujo's claims against it are not barred on procedural grounds, it is still entitled to be dismissed from the action because the plaintiff has failed to allege sufficient facts to state a claim under Title VII or Chapter 151B. As described below, the defendant has not shown that Araujo's claims are barred by his alleged failure to file an administrative charge within the limitations periods set forth in Title VII and Chapter 151B, but it has demonstrated that the plaintiff's allegations are insufficient to state a plausible discrimination claim against it under either statute. Accordingly, and for all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that athenahealth's motion to dismiss be ALLOWED. However, this court further recommends that the dismissal be WITHOUT PREJUDICE.

## II. STATEMENT OF FACTS

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the

court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all

reasonable inferences. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir.

1999). Where, as here, the plaintiff is proceeding pro se, the court must construe his

allegations liberally. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50

L. Ed. 2d 251 1976 (a pro se complaint, however inartfully pleaded, must be liberally

construed). "Ordinarily, a court may not consider any documents that are outside of the

complaint, or not expressly incorporated therein, unless the motion is converted into one

for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d

30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the

authenticity of which are not disputed by the parties; for official public records; for

documents central to plaintiffs' claim; or for documents sufficiently referred to in the

complaint.'" Id. (quoting Watterson v. Page, 987 F. 2d 1, 3 (1st Cir. 1993)).[1] Applying

---

[1] Consistent with the relevant standard, this court has considered emails and other documents that have been referred to in and attached to Araujo's Verified Complaint ("Compl. Ex. at __"). In addition, this court has considered Araujo's charge of discrimination, which was filed with the MCAD and is attached as an exhibit to athenahealth's Motion to Dismiss ("Def. Ex. 1"). Not only does the Complaint reference Araujo's effort to resolve his discrimination claims at the MCAD (see Compl. (Docket No. 1) ¶¶ 5(P), 6), but also where, as here, the plaintiff asserts a claim based on race discrimination under Chapter 151B, it is appropriate to consider any administrative charge that the plaintiff filed with the state agency. See Rodgers v. Callaway Golf Operations, Inc., 796 F. Supp. 2d 232, 239 (D. Mass. 2011) (considering plaintiff's MCAD charge, despite plaintiff's failure to reference it directly in his complaint, where plaintiff asserted a claim under Chapter 151B and was therefore required, "before bringing the action to court, to first file a charge of discrimination with the MCAD").

these standards to the instant case, the facts relevant to athenahealth's motion to dismiss are as follows.[2]

### Araujo's Employment at Arsenal on the Charles

The plaintiff, Araujo, is an employee of DTZ, a company that provides cleaning and maintenance services to businesses. (See Compl. (Docket No. 1) ¶ 3 and Closing Argument; Def. Ex. 1 at 1). In September 2008, Araujo allegedly began working as a cleaning and maintenance supervisor at the Arsenal on the Charles property located in Watertown, Massachusetts. (See Compl. ¶¶ 2-3). At the time of the events giving rise to this action, Arsenal on the Charles was owned by Harvard University and was managed by Beal, Inc. (See id. ¶ 9; Compl. Ex. at 26). It also had 27 different tenants that occupied approximately 900,000 square feet of building space. (Compl. ¶ 3). One of those tenants was the defendant, athenahealth. (Id. ¶ 1).

Araujo claims that Lou Amaral ("Amaral"), the Director of Operations at DTZ, and Antonio Costa ("Costa"),[3] the Office Manager for athenahealth, had opposed the

---

[2] Araujo's Verified Complaint consists of 15 pages of typewritten text, as well as 95 pages of exhibits. The extensive number of exhibits, which include various documents that appear to have little if anything to do with the plaintiff's claims of race discrimination, makes it somewhat difficult to determine which facts are significant and when various events took place. The Statement of Facts set forth herein reflects this court's best effort to describe the facts that are material to the plaintiff's claims against athenahealth and are relevant to the defendant's motion to dismiss.

[3] In his Complaint, Araujo refers to Costa as both "Mr. Costa" and "Mr. Acosta." athenahealth has indicated that the correct spelling of its Office Manager's name is "Costa." (See Def. Mot. (Docket No. 10) at 5). Therefore, this court has referred to that individual as "Costa" throughout this Report and Recommendation.

selection of the plaintiff as a supervisor at Arsenal on the Charles, and had wrongfully accused him of an attempted attack on a woman in an effort to keep him away from the property. (See id. ¶¶ 1-2). He further claims that Amaral's and Costa's actions were motivated by Costa's dislike of Araujo's skin color and deficiency in English. (Id. ¶ 4). Allegedly, however, the managers of the property believed that the plaintiff was honest, responsible and hardworking. (Id. ¶ 2). Accordingly, Araujo became a supervisor despite the opposition. (See id. ¶¶ 2-3).

Araujo alleges that during his employment at Arsenal on the Charles, he was one of three supervisors who were responsible for cleaning and maintenance at the site. (Id. ¶ 3). The other supervisors were Hector Flores, who was responsible for approximately 70,000 square feet of space that was occupied by Harvard University, and Vital DaSilva, who was responsible for approximately 120,000 square feet of space that was occupied by athenahealth. (Id.). Araujo claims that he had responsibility for the remaining portions of the property, which included over 700,000 square feet of space. (Id.).

The record indicates that the plaintiff valued the job in Watertown, not only because it provided him with a supervisory role, but also because it afforded him certain benefits. In particular, it enabled him to obtain a scholarship from Harvard University in order to study computer science and English as a second language. (Compl. Ex. at 28). It also enabled him to obtain health insurance, which was vital to Araujo because he suffers from diabetes. (Compl. ¶ 5(P)). Additionally, the record shows that other members of the plaintiff's family were working at Arsenal on the Charles at the time Araujo was

employed there.  (Id. ¶ 5(Q); Compl. Ex. at 62).  Thus, it appears that it was convenient

for him to remain at that location.

## Araujo's Transfer to Another Property

Although the plaintiff was not responsible for any of the cleaning or maintenance

work that was performed at athenahealth, and had no relationship with that defendant, he

claims that Costa, athenahealth's Office Manager, repeatedly expressed hostility toward

him.  (See Compl. ¶¶ 5(D), 9-10; Compl. Ex. at 32).  For example, Araujo asserts that in

September 2010, Costa requested that the plaintiff return his access card to athenahealth's

facility.  (Compl. Ex. at 18, 32).  Because he was not required to perform work for

athenahealth, and had already given up access to the defendant's premises, Araujo "did

not pay much attention to the matter" and did not object to Costa's behavior at that time.

(See id.; Compl. ¶ 10).  However, he later learned from various sources that Costa

allegedly had  "made it his mission to get [Araujo] out of the property."  (Compl. Ex. at

32).  As described below, the plaintiff contends that Costa was instrumental in the

decision to remove him from Arsenal on the Charles.

On March 3, 2011, Araujo allegedly learned that Amaral, DTZ's Director of

Operations, was having him transferred to another property where he would be demoted

to the position of day-porter and be required to switch his work schedule.  (Id. at 28).

Araujo believed that such a move would jeopardize his academic scholarship and force

him to drop out of school.  (Id.).  Accordingly, he contacted his supervisor and expressed

his objection to the transfer.  (See id.).

Subsequently, on or about March 4, 2011, Araujo was asked to attend a meeting with Amaral. (Id. at 28, 32). During the meeting Amaral allegedly spoke to the plaintiff in a threatening manner and informed him that DTZ would be transferring him to another property. (Id.). Araujo claims that when he asked Amaral to explain the reason for the transfer, Amaral told him that Costa and athenahealth did not want him to remain at Arsenal on the Charles. (Id.). Although there is no indication that Amaral provided any further explanation for the decision to have Araujo transferred or for Costa's objection to the plaintiff's presence at the property, Araujo contends that the defendants' actions were based on his skin color. Thus, in an email dated March 7, 2011 and directed to Jonathan Bush, the President and CEO of athenahealth, the plaintiff complained about Costa's alleged role in the decision to have him transferred, and he stated in pertinent part as follows:

> I understand that the only mistake I have done, is to be an immigrant from poor country made of dark skinned people; contrary to Mr. [Costa] who comes from a rich country with the majority of its population being light skinned individuals. But as you may know we live in a country in which federal laws prohibit discrimination against an individual based on his race, color, gender, religion, etc.

(Id. at 32; see also Compl. ¶ 10). However, Araujo has not alleged any specific facts describing the basis for his belief that Costa was motivated by the plaintiff's skin color or that his actions were discriminatory.

The record indicates that Araujo remained employed at Arsenal on the Charles for nearly six additional months after his discussion with Amaral. (See Compl. ¶¶ 5(I),

5(K)). Then, on August 29, 2011, he was summoned to a meeting at which Roberta Newcomb, a DTZ representative, allegedly informed him that he was being transferred to a facility in Chelsea, Massachusetts, effective immediately. (Id.). According to Araujo, Ms. Newcomb also told him that he was no longer allowed to step foot on the Arsenal on the Charles property, and that any belongings he had left there would be picked up by another DTZ employee. (Id. ¶ 5(K)). In a letter dated August 29, 2011, Alex Pena, DTZ's Area Manager, confirmed the company's decision to transfer the plaintiff to Chelsea as follows:

> Dear Mr. Araujo:
>
> Please be advised that based upon operational needs, effective immediately, you are being reassigned to work as a shift supervisor in the Special Services division of UGL Services which is located at 219 Williams Street, Chelsea, MA. Your salary will remain at $16.00 per hour. In this position you will report directly to Vence Pires.

(Compl. Ex. at 4). Although DTZ attributed its decision to "operational needs," Araujo contends, based on his communications with Amaral and Ms. Newcomb, that DTZ's decision to reassign him to Chelsea was really attributable to Costa's desire to have the plaintiff removed from the Watertown site. (See Compl. Ex. at 62).

### Araujo's Administrative Charge

Araujo alleges that he had never received a complaint regarding his work prior to the events surrounding his transfer, and that his expulsion from the property was both inappropriate and illegal. (Compl. ¶¶ 5(L), 8). Consequently, on September 9, 2011,

eleven days after the effective date of the transfer, the plaintiff filed a charge of discrimination with the MCAD in which he claimed that DTZ and athenahealth had discriminated against him on the basis of his race, in violation of Title VII and Chapter 151B, § 4(1). (Def. Ex. 1 at 1). In describing the basis for his charge, Araujo stated in relevant part as follows:

> On August 29, 2011, I was re-assigned from The Arsenal On The Charles to a different site located in Chelsea, Massachusetts. I received a letter from [DTZ] stated (sic) that effective immediately, I was assigned to work as the Shift Supervisor in the Special Services Division located at 219 Williams Street, Chelsea, MA.
>
> Upon belief and knowledge, Mr. Tony [Costa] (Manager) who is an employee with Athena Health, one of the company (sic) within the [twenty]-seven (27) companies inside of The Arsenal On The Charles told Mr. Lou Amaral (Respondent [DTZ's] Operations Supervisor) that he did not want me working on the property. I believed Mr. [Costa] did not want me working on the property because of my dark skin (Black). Mr. [Costa] is Portuguese with fair skin and because I am of a darker skin complexion, he did not want me on the property.

(Id.). By his complaint in the instant action, Araujo also claims that the defendants discriminated against him on the basis of his skin color. (See Compl. at Closing Argument).

Additional factual details relevant to this court's analysis are set forth below where appropriate.

## III. ANALYSIS

### A. Motion to Dismiss Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. <u>Cooperman</u>, 171 F.3d at 46. Dismissal is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief." <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95 (1st Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane." <u>Garcia-Catalan v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" <u>Id.</u> (quoting <u>Morales-Cruz v. Univ. of P.R.</u>, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Haley v. City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011)) (additional citation omitted). This second step requires the reviewing court to "draw on its judicial experience and common sense." <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." <u>Morales-Cruz</u>, 676 F.3d at 224 (quoting <u>SEC v. Tambone</u>, 597 F.3d 436, 442 (1st Cir. 2010)).

**B.    Timeliness of Araujo's Administrative Charge**

athenahealth argues, as an initial matter, that Araujo's claims under both Title VII and Chapter 151B must be dismissed because the plaintiff failed to file his MCAD charge within the applicable limitations period. (See Def. Mot. at 7-9). For the reasons that follow, this court finds that the plaintiff's charge was timely.

Pursuant to Title VII, an aggrieved individual must file a charge "with a State or local agency . . . within three hundred days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). See also Thomas v. Eastman Kodak Co., 183 F.3d 38, 47 (1st Cir. 1999) (explaining that in Massachusetts, Title VII requires the filing of a charge with the EEOC within 300 days following the occurrence of the alleged unlawful employment practice). Similarly, under Chapter 151B, "[t]he applicable limitations period for filing an administrative complaint is 300 days" following "the act of discrimination" alleged by the plaintiff. Navarro v. U.S. Tsubaki, Inc., 577 F. Supp. 2d 487, 504 (D. Mass. 2008) (quotations and citation omitted). See also Mass. Gen. Laws ch. 151B, § 5 ("Any complaint filed pursuant to this section must be so filed within 300 days after the alleged act of discrimination"). In the instant case, the record establishes that Araujo filed a charge of discrimination with the MCAD on September 9, 2011, only 189 days after he first learned of DTZ's intention to transfer him away from the Arsenal on the Charles property and 11 days after the effective date of his transfer from

Watertown to Chelsea. (See Def. Ex. 1 at 1; Compl. Ex. at 28; Compl. ¶¶ 5(I), 5(K)).

Therefore, his administrative charge was filed well within the requisite time period.[4]

The defendant argues that "the only adverse event that has any plausible connection to athenahealth occurred no later than September 2010, when, at athenahealth's request, Plaintiff was required to return his access card for the athenahealth premises." (Def. Mot. at 8). It further reasons that because Araujo did not file his administrative charge until September of the following year, "his claim under both the federal and state statutes is time-barred." (Id.). If, as athenahealth contends, the plaintiff's claims were based on the incident involving the access card, this court agrees that they would be barred as untimely. However, the record indicates that his claims against athenahealth are based not on Costa's alleged request for the return of the access card, but rather on Costa's involvement in the decision to transfer Araujo from the Watertown property. Thus, in his complaint, Araujo repeatedly complains about Costa's alleged efforts to have him removed from Arsenal on the Charles. (See, e.g., Compl. ¶¶ 5(D), 5(E), 7, 8). Moreover, Araujo specified in his charge filed with the MCAD that his claims of discrimination against both DTZ and athenahealth were based upon his reassignment from Watertown to Chelsea on August 29, 2011, including Costa's alleged role in the

---

[4] Due to what has been characterized as a "worksharing agreement" between the EEOC and the MCAD, "claims filed with either the MCAD or the EEOC are effectively filed with both agencies." Davis v. Lucent Techs., Inc., 251 F.3d 227, 230 n.1 (1st Cir. 2001). Consequently, Araujo's MCAD charge satisfies his obligation to file an administrative charge under both Title VII and Chapter 151B.

events surrounding the transfer. See Rodgers v. Callaway Golf Operations, Inc., 796 F.

Supp. 2d 232, 239 (D. Mass. 2011) (relying on substance of plaintiff's MCAD charge

to determine the nature of plaintiff's claims in the litigation and whether they were

preempted by federal law); Navarro, 577 F. Supp. 2d at 502-03 (explaining that under

Massachusetts law, a plaintiff filing a discrimination action in state or federal court may

pursue only those claims that fall within the scope of the administrative charge of

discrimination). Therefore, athenahealth's characterization of Araujo's claims is not

supported by the record.

The defendant's assertion that the plaintiff has not alleged sufficient facts to link

athenahealth to his transfer away from the Watertown premises is also unpersuasive. As

described above, both the complaint and Araujo's MCAD charge contain allegations

attributing DTZ's decision to transfer the plaintiff to Costa's efforts to have him removed

from the property. In addition, the documents attached to the complaint indicate that the

plaintiff believed that DTZ was acting at Costa's request when it decided to assign the

plaintiff to an alternative location. (See, e.g., Compl. Ex. at 28, 32, 62). The fact that six

months elapsed between the time Amaral informed Araujo that Costa did not want him to

remain at the property and the time when DTZ effectuated the transfer does not under-

mine the plaintiff's claim that Costa was instrumental in the adverse employment action.

At this stage in the litigation, Araujo's assertion that Costa "made it his mission to get

[him] out of the property[,]" as well his allegation that he was transferred because

athenahealth determined that it "did not want [him] as the supervisor" at Arsenal on the

Charles is adequate to support a plausible link between athenahealth and the allegedly unlawful conduct. (See Compl. ¶ 8; Compl. Ex. at 32).

In short, the record shows that Araujo filed his MCAD charge within 300 days of the relevant conduct, as required under both Title VII and Chapter 151B. Therefore, athenahealth is not entitled to dismissal based on his failure to file a timely administrative charge.[5]

## C.    Absence of an Employment Relationship

In his charge filed with the MCAD, Araujo alleged that he had been discriminated against "in violation of M.G.L. c. 151B Section 4 Paragraph 1 and Title VII." (Def. Ex. 1 at 1). athenahealth argues that Araujo cannot maintain a claim against it under either Chapter 151B, § 4(1) or Title VII because he has not alleged, and could not allege, that he was an employee of athenahealth. (Def. Mot. at 9-10). This court agrees, and finds that any such claims must be dismissed.

Title VII provides in relevant part that

> [i]t shall be an unlawful employment practice for an *employer*... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

---

[5] athenahealth argues in a footnote that even if the administrative claim was timely, the complaint should be dismissed because Araujo has failed to demonstrate that he brought this lawsuit within the statute of limitations for bringing a discrimination action under Title VII. The First Circuit has "repeatedly held that arguments raised only in a footnote or in a perfunctory manner are waived." Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.17 (1st Cir. 1999). Because athenahealth has failed to develop this argument, this court considers it waived and will not address it further.

> terms, conditions, or privileges of employment, because of such
> individual's race, color, religion, sex, or national origin[.]

42 U.S.C. § 2000e-2(a) (emphasis added). "One of Congress' objectives in enacting Title

VII was 'to achieve equality of employment opportunities . . . .'" Adcock v. Chrysler

Corp., 166 F.3d 1290, 1292 (9th Cir. 1999) (quoting Griggs v. Duke Power Co., 401 U.S.

424, 429, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971)). "Consequently, there must be some

connection with an employment relationship for Title VII protections to apply." Id.

(quoting Lutcher v. Musicians Union Local 47, 633 F.2d 880, 883 (9th Cir. 1980)). See

also Lopez v. Massachusetts, 588 F.3d 69, 72 (1st Cir. 2009) ("The Title VII claim

depends on the [defendant] being the 'employer' of the [plaintiff] officers"). In the

instant case, there is no dispute that there was no such relationship between Araujo and

athenahealth. (See Pl. Opp. Mem. (Docket No. 21) ¶ 2 (conceding that "there was no

relationship between Plaintiff and Defendant (athenahealth, Inc.)"). Therefore, Araujo

has not and cannot state a claim against athenahealth pursuant to Title VII.

To the extent Araujo is attempting to state a claim against athenahealth under

Chapter 151B, § 4(1), any such claim must be dismissed as well. That statute reads in

relevant part as follows:

> It shall be an unlawful practice... For an *employer*, by himself or his
> agent, because of the race, color, religious creed, national origin,
> sex, gender identity, sexual orientation, which shall not include
> persons whose sexual orientation involves minor children as the sex
> object, genetic information, or ancestry of any individual to refuse to
> hire or employ or to bar or to discharge from employment such
> individual or to discriminate against such individual in compensation

> or in terms, conditions or privileges of employment, unless based
> upon a bona fide occupational qualification.

Mass. Gen. Laws ch. 151B, § 4(1) (emphasis added). "[N]o Massachusetts appellate decision ever has interpreted § 4(1) to apply to an action brought by or against someone outside the employment unit." Thomas O'Connor Constructors, Inc. v. Mass. Comm'n Against Discrimination, 72 Mass. App. Ct. 549, 555-56, 893 N.E.2d 80, 85-86 (2008). Because there was no employment relationship between Araujo and athenahealth, the plaintiff has failed to state a claim against athenahealth under Section 4(1) of Chapter 151B.[6] See id. at 85 (finding that general contractor could not be liable to employee of sub-contractor "because there was no employment relationship" between the two parties).

### D. Failure to State a Claim Under Alternative Provisions of Chapter 151B

athenahealth contends that to the extent Araujo is attempting to state a claim under the sections of Chapter 151B that do not require an employment relationship, he has failed to allege sufficient facts to support any such claim. In particular, athenahealth argues that "nothing in [Araujo's] pleadings presents facts supporting a claim for retaliation under M.G.L. c. 151B § 4(4), interference, coercion, threat or intimidation under M.G.L. c. 151B § 4(4A), or 'aiding and abetting' under M.G.L. c. 151B § 4(5)."

---

[6] In light of this court's conclusion that the absence of an employment relationship between Araujo and athenahealth precludes any claim against that defendant under Title VII or Chapter 151B, § 4(1), it is unnecessary to address the defendant's argument that those claims must be dismissed because the plaintiff has failed to "allege *facts* sufficient to support a claim that athenahealth took any adverse employment action against Plaintiff that was motivated by impermissible discriminatory animus." (Def. Mot. at 10).

(Def. Mot. at 13). There is nothing in the complaint or in the plaintiff's MCAD charge to suggest that he is attempting to state a claim under any of these provisions. In an abundance of caution, however, and since this court recommends that the dismissal of the complaint be without prejudice, this court will briefly address why the plaintiff has failed to state a claim under these provisions as well. [7]

### Claim for Retaliation

Section 4(4) of Chapter 151B makes it unlawful "[f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint" with the MCAD. Mass. Gen. Laws c. 151B, § 4(4). "[T]o make out a prima facie case of retaliation, the plaintiff must show that he engaged in protected conduct, that he suffered some adverse action, and that a causal connection

---

[7] In his opposition to athenahealth's motion to dismiss, Araujo argues that under "Chapter 151b Section 4, for a labor organization, an individual (Plaintiff) cannot be excluded from full membership rights (athenahealth, Inc.'s premises) based on his race/skin color." (Pl. Opp. Mem. (Docket No. 21) ¶ 2). To the extent the plaintiff purports to state a claim under Chapter 151B, § 4(2), which relates to labor organizations, this court recommends that any such claim be dismissed. Section 4(2) of Chapter 151B makes it unlawful "[f]or a labor organization, because of the race [or] color ... of any individual, ... to exclude from full membership rights or to expel from its membership such individual or to discriminate in any way against any of its members or against any employer or any individual employed by an employer unless based upon a bona fide occupational qualification." The term "labor organization" is defined in the statute to include "any organization which exists and is constituted for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment, or of other mutual aid or protection in connection with employment." Mass. Gen. Laws ch. 151B, § 1(3). There is no indication, either in the complaint or in any of the attachments thereto, that athenahealth falls within this definition. Thus, Araujo has not shown that Chapter 151B, § 4(2) is applicable to this case.

existed between the protected conduct and the adverse action." Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133, 147 (D. Mass. 2011) (quoting Psy-Ed Corp. v. Klein, 459 Mass. 697, 707, 947 N.E.2d 520 (2011)).

The plaintiff's allegations in the instant case do not satisfy the elements of a retaliation claim. Araujo has alleged that he learned about DTZ's decision to transfer him to another property on March 3, 2011, but he did not complain about any discrimination until March 7, 2011, when he sent an email to athenahealth's President and CEO, Jonathan Bush. (See Compl. Ex. at 28, 32; see also Compl. ¶ 10). Even assuming that the email constituted protected conduct, the earlier decision to transfer Araujo to Chelsea could not have been in retaliation for his complaint.

Similarly, the complaint does not support a finding that his transfer on August 29, 2011 was in retaliation for his complaining email. First of all, according to the plaintiff no one responded to his email or otherwise commented on his claim of discrimination. (Compl. ¶ 10). Therefore, there is nothing to link Araujo's complaint to the transfer almost six months later. Second, and even more fundamentally, Araujo has not alleged any facts in support of his personal conviction that Costa's desire to have him removed from the property was due to either the color of his skin or the fact that he had sent a complaining email.

### Claim Under Section 4(4A)

athenahealth contends that the plaintiff has failed to allege sufficient facts to make out a claim under § 4(4A) of Chapter 151B, which makes it unlawful "[f]or any person to

-18-

coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter . . . ." "There is no question that G.L. c. 151B, § 4(4A), prohibits interference with an employee's right to work in an environment free of unlawful [race] discrimination." McLaughlin v. City of Lowell, 84 Mass. App. Ct. 45, 72, 992 N.E.2d 1036, 1057 (2013). Assuming, without deciding, that such a claim may be asserted against athenahealth for its employee's conduct in encouraging the plaintiff's re-assignment to another property,[8] Araujo has failed to allege any facts, as opposed to his subjective belief, to show that Costa engaged in discriminatory conduct.

In order to maintain a claim under § 4(4A), the plaintiff must allege, at a minimum, facts showing that he was subjected to discrimination. See id. at 74, 992 N.E.2d at 1058 ("Absent actionable discriminatory conduct, there exists no basis on which to ground a claim of interference" under Chapter 151B, § 4(4A)). Araujo's complaint does not meet this requirement. While Araujo has alleged that he "was discriminated against for the simple fact that [he is] a dark skin[ned] immigrant man," and has asserted that Costa's opposition to his presence at Arsenal on the Charles was based on his skin color,

---

[8] It appears that Massachusetts courts have yet to define the precise scope of Chapter 151B, § 4(4A). As one court observed, "interpreted literally, the scope of § 4(4A) is almost without limit and might render redundant many of the individual provisions of G.L. c. 151B, § 4, that outlaw discrimination in particular contexts including the core protection against discrimination in employment afforded by § 4(1)." Thomas O'Connor Constructors, Inc., 72 Mass. App. Ct. at 556 n.10, 893 N.E.2d 86 n.10. However, that court specifically declined to "resolve that uncertainty." Id.

the complaint is void of any specific facts supporting his conclusory allegation that

Costa's actions were motivated by the plaintiff's race. (Compl. at Closing Argument;

Compl. Ex. at 32). As described above, allegations that are too "conclusory to remove

the possibility of relief from the realm of mere conjecture" are insufficient to withstand a

motion to dismiss under Fed. R. Civ. P. 12(b)(6). Morales-Cruz, 676 F.3d at 224 (quota-

tions and citation omitted). Where, as here "there is no support for [Araujo's] position

other than his own speculation" that Costa's conduct was racially motivated, the plaintiff

has failed to state a plausible claim for relief. McBride v. Mass. Comm'n Against

Discrimination, 677 F. Supp. 2d 357, 362 (D. Mass. 2009).

### Claim for Aiding and Abetting

The defendant also argues that Araujo has failed to state a claim for aiding and

abetting under Chapter 151B, § 4(5). That provision "makes it unlawful for 'any person,

whether an employer or an employee or not, to aid [or] abet . . . the doing of any of the

acts forbidden under [G.L. c. 151B] or to attempt to do so.'" Lopez v. Commonwealth,

463 Mass. 696, 713, 978 N.E.2d 67, 81-82 (2012) (alterations in original). Again, this

court finds that the plaintiff's allegations are insufficient to support such a claim.

In order to prevail on a claim for aiding and abetting under Chapter 151B, § 4(5),

the plaintiff must prove the following elements:

> (1) that the defendant committed "a wholly individual and distinct
> wrong ... separate and distinct from the claim in main"; (2) "that the
> aider or abetter shared an intent to discriminate not unlike that of the
> alleged principal offender"; and (3) that "the aider or abetter knew of

> his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under G.L. c. 151B."

Id. at 713, 978 N.E.2d at 82 (quoting Harmon v. Malden Hosp., 19 Mass. Discrimination L. Rep. 157, 158 (1997)) (alteration in original). Moreover, "[a]n aiding and abetting claim under § 4(5) . . . is . . . 'entirely derivative of the discrimination claim.'" Id. (quoting Abramian v. President & Fellows of Harvard Coll., 432 Mass. 107, 122, 731 N.E.2d 1075 (2000)). Therefore, "in addition to the 'individual and distinct wrong' that the defendant must be alleged to have committed, the complaint must allege the commission of an underlying act of discrimination under G.L. c. 151B (the 'main claim') by the principal offender." Id.

As described above, the plaintiff has provided nothing more than conclusory allegations to show that his re-assignment from Watertown to Chelsea was based on race or the color of his skin. The complaint is devoid of any factual support for the conclusory allegation that Costa's opposition to his presence at Arsenal on the Charles was motivated by racial animus or that DTZ acted with a discriminatory intent when it decided to transfer him to Chelsea. Accordingly, Araujo has not stated a plausible claim that athenahealth, through the actions of its Office Manager, aided and abetted DTZ in carrying out an act of employment discrimination.[9]

---

[9] In light of this conclusion, this court declines to address athenahealth's argument that any claim for aiding and abetting under Chapter 151B, § 5 must fail for the additional reason that Araujo "has not alleged any 'distinct wrong' allegedly committed by athenahealth that is separate and apart from some underlying discriminatory act either by Mr. Costa or by DTZ[.]" (Def. Mot. at 15).

### E. athenahealth's Request for Dismissal with Prejudice

athenahealth requests that Araujo's complaint be dismissed with prejudice because that plaintiff has failed "to 'raise a reasonable expectation that discovery will reveal evidence' of any unlawful conduct by athenahealth." (Def. Mot. at 16). While this court finds that dismissal is appropriate, this court recommends that the dismissal be without prejudice. Pursuant to Fed. R. Civ. P. 15(a), leave to amend should be freely given "when justice so requires." Araujo has not sought leave to amend, and has not had an opportunity to present arguments in favor of an amendment. Moreover, this court is not able to conclude, at this early stage in the proceedings, that any effort by Araujo to amend his complaint would necessarily be futile. Accordingly, this court recommends that the complaint be dismissed, but that the dismissal be without prejudice.

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that "athenahealth Inc.'s Motion to Dismiss" (Docket No. 10) be ALLOWED, and that the complaint be dismissed WITHOUT PREJUDICE.[10]

---

[10] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-

/ s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).